**Bobby Joe MANOS, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–16727.**

Court of Criminal Appeals of Oklahoma.

Oct. 8, 1971.

**785**

Wayne Hagle, Oklahoma City, for plaintiff in error.

Larry Derryberry, Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Bobby Joe Manos, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Oklahoma County for the offense of Unauthorized Use of a Motor Vehicle, After Former Conviction of a Felony; his punishment was fixed at one year imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Claudette Carlile testified that on September 16, 1970, she lived at 920 Farra Drive, and owned a 1969 Mercury Cougar, which she parked in her driveway about 5:30 p. m. She was out with a friend, and upon returning about midnight, she saw that the car was still parked there. Upon awakening the next morning, she no-

ticed the car was gone. She called the police, and recovered her car the next day.

Wheeler Carlile testified that he was Claudette's brother, and about 9:45 a. m., on September 16, he happened to be at 30th Street and South Walker with Kenneth Strain. Wheeler saw his sister's car, which he was able to recognize because it was an unusual orange color. The car was on 36th Street and stopped at a red light. Wheeler ran over and saw that the defendant was driving the car. Wheeler accosted the defendant, and after some words, mentioned calling the police, whereupon the defendant got out of the car and ran into a nearby house. Wheeler called the police, and they arrived shortly.

Kenneth Strain testified substantially the same as Wheeler Carlile. He testified, also, that they both chased the defendant into the house, and Kenneth stood guard with a brick while Wheeler called the police. During the confrontation between the three, the defendant insisted that a boy had lent him the car. (Tr. 28)

Officer Smith, Oklahoma City Police Department, testified that about 10:30 a. m. that day, he and his partner were sent to 525 Southwest 36th Street, where they encountered Kenneth and Wheeler, who told them of the stolen car. Smith went to the house and called the defendant out. After verifying that the car was stolen, he questioned the defendant, who told him that a friend, David Mysinger, had lent him the car to go and pick up two girls. Defendant gave Mysinger's address, and the officer later questioned Mysinger. The defendant at all times denied stealing the car.

Officer Owen, Oklahoma City Police Department, testified that he was Smith's partner that day. His testimony did not differ substantially from that of Smith.

May Boyd testified that she lived at 525 Southwest 36th Street, and the defendant appeared at her door that morning between 9:00 and 10:00 o'clock, and asked if he could call the police. She let him in and told the other two boys she was calling the

police. They waited outside, and one held a brick in his hand as if he would like to throw it. She told the defendant that he could leave by her back door, and he answered, "They would catch me."

For the defendant, Mavis Neary testified that she lived at 1037 North Taylor Drive, and she knew the defendant. For three or four nights prior to the time of his arrest, the defendant spent the night there with her son. The evening before defendant was arrested, he was at her house, and when she returned from work at 7:30 the next morning, the defendant was there asleep on the divan. She was at work between 10:00 p. m. and 6:00 a. m. Defendant left with her son about 7:50 a. m. (Tr. 59)

Richard James Smith testified that the defendant and he were together the evening before defendant got arrested, and the defendant spent the night at his house. Richard went to sleep about midnight, and the defendant was already asleep. Richard's mother woke them up the next morning, and defendant left when Richard went to work.

Defendant testified that the evening before his arrest, he was with Richard Smith and spent the night at his house. They left about 7:45 the next morning, and Richard dropped the defendant off at the Sugar Shack, and went on to work. Defendant ran across David Mysinger at a nearby service station, where David was doing something to the orange Cougar. He had known David when they lived in Mustang, and after talking a while, David asked him to take the Cougar and pick up two girls at Capitol Hill High School. He did so, and was intercepted by the two boys who claimed the car was stolen. He ran, because he was afraid of the other two, and waited in the lady's house until the police came. He did not know the car was stolen. (Tr. 70)

In rebuttal, David Mysinger testified that he had known the defendant about two or three years, originally in Mustang, but had not seen him for six months, or a year. Mysinger lived with his grandparents, and on the evening of September 15, went to the drag races, returning home shortly before midnight. He spent the night there, and was awakened the next morning by Officer Owen about 9:30. His grandmother was there all the time, and he denied lending defendant any automobile, or talking with him on the morning of September 16.

Geneva Stone testified that she lived at 2442 Southwest 20th, with her husband, and David Mysinger. She had just gotten up on September 16, when the police came about 9:30 or 10:00 o'clock to talk to David. The night before, David returned from the drag races shortly before midnight, and she and her brother and David watched television and visited until about 3:30. David went to bed before she did and remained there all night.

■ Defendant's proposition contends that the verdict is not supported by the evidence. We have repeatedly held that when there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence, since it is the exclusive province of the jury to weigh the evidence and to determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805 (1970).

■ The last proposition asserts that the punishment is excessive. We are of the opinion that a sentence of one year for the offense charged is extremely lenient.

The record is free of any error which would justify modification or require reversal. The judgment and sentence is hereby affirmed.

BRETT and NIX, JJ., concur.